Mr. Clerk, will you call the next case, please? 311-0066, City of Cuba, appellant by Thomas Davies v. City of Canton, appellate by Christy Peterson. Mr. Davies? Thank you. Very pleased to be here. My name is Tom Davies. I'm here on behalf of the City of Cuba. There's three basic reasons that we're here today. Number one, we're looking at a contract that was prepared by Canton, which, as I indicated, if it had been prepared differently and had certain language in it, you wouldn't have anything to decide. Number two is, after the contract was first entered into in 1982, at that time in the stipulated facts, it was agreed the water rates of Canton were low, and it's undisputed there's been a large increase in the water rates. Now, what has that caused? That has precipitated action by my client to say, well, we've got to look into this. We think we can provide water to our customers for a cheaper amount than they're being charged. Canton would suggest that's bad faith. I would suggest that's good government and that the motives of Cuba were pure, and there's nothing wrong with trying to do that. We're looking at a contract that's basically a form contract that was used twice. I can't stand here and tell you, and I doubt Attorney Peterson would either, that any of us can presuppose that this issue was really contemplated or discussed by the parties when the contract was done in 1982 and 1997. I think there's some fallacies in the contract which would indicate why Cuba should prevail. Let's look at the basic principles of law. I don't think they're really in dispute. If you look at the rules of construction for contracts, I think we're all familiar with those. All of those would favor a ruling in favor of Cuba. Cuba did not write up the contract. Any deficiencies in the contract should be construed against Canton. Then there's the question of, well, what does the word may mean? I would suggest that it's very clear under the law that the word may is permissive. It's not mandatory. The word shall wasn't used. I would further comment, although I didn't say it in my brief, I took a legal writing course where I viewed it recently, and the speaker there said even shall isn't a very good word, and cited that there's over a thousand cases trying to interpret what does that mean. Then he used, for example, the federal rules, which I don't presuppose to know, only used that word shall once. That may not be a good word. Must or will would be a better word, but the word they used is may. What kind of a contract is it? That's an issue. Is it what's called a requirements contract or something that's relatively new, which has been classified as a buyer's option contract? Again, I think we all agree that the cases that have interpreted this are the same. It's going to be a matter somewhat for this court to apply those cases to this factual situation. I would suggest that the best case to look at is the Brooklyn Bagel Boys case. It's very similar to this. The court there held that it was not a requirements contract. It's simply a matter where two parties contracted. Let's say I'm selling widgets, and I have a capacity to sell millions of them, and you want to buy them. If I don't say you have to buy 200,000 a year or you can't buy more than X amount, if I just say I'll sell them to you at a predetermined price, that was my decision. That's what Canton did in their agreement. It's very logical. I think black isn't white, odd isn't even, may is not the same as shall. It's that simple. Let's look at the ending words of the sentence in the paragraph that's under consideration. Canton pointed out in their brief, well, let's look at the whole sentence, and I agree. Actually, we'll look at the end of the sentence. What does the sentence say? As may be required by the purchaser for use by consumers. That could have been said any one of three ways. It could have stopped at as may be required, or it could have said as may be required by consumers for use. But it has another element, by the purchaser. It says as may be required by the purchaser. I'm suggesting that gives the purchaser the right to determine how much of this particular commodity, in this case water, do they want to obtain from Canton to give to their consumers. Without that language, I think Canton would probably have a better argument. But that's the language that was used. Those all aren't the same things. And let's talk a little bit about fundamental fairness, since Canton brings up the issue of good faith, bad faith. Let's see, who is exercising good faith and who is exercising bad faith? I don't for the life of me see how someone can say that because a governmental body, Cuba, wants to try and obtain water at a cheaper source for its citizens, that that's bad faith. I think the fact that these are two municipal entities makes a difference in the construction of the contract somehow. As opposed to two private parties. Yes, to some degree, I think it is because I would suggest that Canton, their government, they're not supposed to be in the business of supplying water and making a profit, especially when it's at the expense of another municipality. So it's a different standard. It's not a private company. We all agree private companies are entitled to make a profit. But I don't, I'm suggesting that Canton should not be able to, that's not their function. Furthermore, as I'm sure the court knows, municipalities, they're not regulated on their rates. There certainly are some constraints in the law, but those are not, I don't think, all that clear, such as if you were a private company, you have to go to the ICC, you've got 500 different rules and regulations you have to follow to justify your rates. Well, in this case, trying to anticipate some argument by Canton, I wanted to look at those figures to determine why is their rate so high that Cuba thinks they can provide it separately? Well, Canton doesn't want to provide that information. I frankly think under the law, I could have got it under freedom of information, but that isn't the central issue that we wanted to decide. That's another issue. I think if you look at the questions I posed in my brief and reply, and I still don't think they've been answered by Canton, and I think they all had to be answered one way, and they're not. They cite the law states that in a requirements contract, you must use the language will require or something similar. That language is not in this agreement. Secondly, the courts all agree and use the terminology exclusivity to be an element of a requirements contract. There's no disagreement. That language is not in this agreement. The third element of prong, it kind of goes hand in hand with exclusivity, is prohibition. As the court in modern Derry stated, that if the contract would have said, you cannot purchase commodity X from anybody else, then that would logically mean that, well, then if I can't purchase it from here, I have to purchase it from here. There is no language like that in this contract. Frankly, I think the parties probably never contemplated it, but I don't think at this point, it's up to the court to remedy the defects that Canton caused on their own. I think if you balance the scale, on the one hand, you have the city of Cuba, who legitimately, and for once government, for lack of a better term, is trying to do the right thing by providing a valuable service to people. We all need water, and they can provide it cheaper. On the other hand, you have Canton, number one, did not incur one nickel of expense to provide this water to Cuba. I stress that because I think if you look at the case law, there can be a thread made that, well, if the manufacturer had to go out and provide something in order to be able to provide this product, then they have a more legitimate argument than, wait a minute, I relied on you, I spent X amount of money under the expectation you're going to buy X amount. That doesn't apply, because Canton didn't spend a nickel. They don't want to tell us how they got their rates. Perhaps if we knew, that would be another story. So in short, what I'm asking this court to do is allow Cuba to serve its constituency and customers by providing water at a lower cost to its customers. Canton is a government. They're not in the business of trying to make a profit. They provide a service, but it's not a company, it's not an enterprise. If the court affirms the trial court, then they are going to be able to continue to do that, presumably raise their rates whenever they want, and the customers and citizens in Cuba are totally at their mercy. They can't go to the ICC. They just keep paying more and more. So for those reasons, and I realize it's a matter of interpretation, and that's a difficult thing. We can all look at something and interpret it a little differently, or we probably wouldn't even be here. But I think if you look at all of the law and all of the rules of contract, instruction, interpretation, and the fundamental fairness of the matter, Cuba should be able to provide water to its citizens at the lowest rate, and it's not going to hurt Canton at all. So based on that, I would ask that this court reverse the trial court's holding. Are there any questions? Thank you very much, Mr. Chairman. Thank you. And Ms. Peterson? May it please the court, counsel, my name is Chrissy Peterson. I represent the city of Canton and have throughout the duration of this litigation. Mr. Davies is correct that the language used in this contract has the word may in it. Cuba goes to great lengths to argue that that word is permissive, it is not mandatory, and therefore they do not have to purchase all of their water from the city of Canton. But I do think you have to read that in the context of the entire sentence. The sentence says, as may be required by the purchaser for use by consumers of the purchaser. Now, counsel referred to in his brief the case walled and how the requirements contracts generally provide that the product or service is supposed to be used in quotes, the words will lead or will require. But if you actually look at those cases, nowhere do the drafters ever say that you have to use the word will, that you have to use mandatory language. There's rather assertions that the language has to be sufficient to promise to buy all the commodity that the buyer may need. Cuba promised to buy the water that all their consumers would use, and that is sufficient in this case to form a requirements contract. One thing you didn't hear opposing counsel mention is the course of dealing and how the UCC and other cases have used that to interpret situations where mutuality is missing in particular contracts. The course of dealing in this case would show that for 27 years the city of Cuba purchased all of their water from the city of Canton. Now, it's not a widget, it's not a bagel, it's not a baseball card. It's not something that is readily available. It's water, and as we all know, that's becoming a commodity that's harder and harder to come by. The city of Canton provides water to not only Cuba but to other municipalities. We provide water actually to about 25,000 people. The case will, excuse me, the contract, I'm very nervous, I'm sorry. The contract talks about how the city of Cuba and the city of Canton will determine the rate. And it says in there that they will set the rate the same as the city of Canton sets the rates for customers within the city of Canton. As a public body, we're required to do that by an ordinance and go through the particular process. One thing that I think is important to note here because counsel mentioned it is, I think there's a reference that the city of Canton is being greedy, that we're attempting to make a profit off of this contract. We charge the city of Cuba the same price that we charge every other municipality that we sell water, which is also the same rate that I as a citizen of Canton pay. Before 2005, the rates had not been increased in five years. And if counsel were to have filed a FOIA, he would have been entitled to that information. We objected to providing it in the trial court because it simply wasn't relevant to the determination of whether or not this contract is a requirements contract. In that vein, Cuba is required to operate in good faith. And we're not saying that they can't have reasonable fluctuations in the amount of water they use. They're going to have consumers move in, they're going to have consumers move out. But they cannot, because they simply have decided the price is too high at this point, not purchase all of their water from us. If the city were to disband, if, although improbable, every citizen of the city of Cuba were to move elsewhere, that would be a reasonable fluctuation. That would be outside their control. There are cases that talk about how contracts have been terminated and whether or not that's in good faith or in bad faith, and those are obviously all cited in our brief. One important thing to know is that where the contracts have been found to be terminated in good faith, they were all related to reasons other than the contract. The entire industry fell apart. Somebody's company went bankrupt and simply could not provide the product any longer. That's not the situation here. Every customer in Cuba didn't move. The city isn't attempting to dissolve and become unincorporated territory within Fulton County. They simply have decided that the price is too high. How did the contract get to be this length, 65 years of requirements? Originally, the contract was signed in 1982, and I believe the first water was taken in 1984. A few years after that, in 1994, the city of Cuba decided that they wanted to sell water to a subdivision, I'm not sure if it's unincorporated or incorporated Cuba territory, but a subdivision that originally wasn't anticipated in the agreement. That subdivision actually sits about halfway between the city of Keaton and the city of Cuba. The original agreement prohibited the resell of water to other commercial entities, so they couldn't have resold it to other small towns and attempted to make a profit off of it. We allowed them to modify the agreement to resell water to WEMATOC. At that point, in 1997, they asked for a 65-year expiration date from the original contract. Technically, this contract does not expire until 2047. To the best of what we were able to determine, the financing that went into the WEMATOC Hills subdivision required Cuba to have a longer guarantee because of the bonds and the loans with Farmers Home Administration. If there are no other questions, I would respectfully request that the court defer court's judgment. Thank you. I guess there are none. Thank you, Ms. Peterson. Mr. Davies, any rebuttal? Just a couple of comments. As may be required is not the same as is required or as shall be required. As far as the course of dealing argument, I think if you look at the Wald case, in that context, it was used to determine the validity of whether they have a contract or not. Not necessarily whether it's a requirements contract or not. If you look at the UCC in the second section, it talks about good faith, but that presupposes that you have an exclusive agreement between the parties. All I'm saying is none of that exists in this case. Any other questions? I guess not. Thank you. Thank you, Mr. Davies. I thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short time. I will now take a short recess for panel discussion.